1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STANFORD TUKWILA HOTEL CORP.,

              Plaintiff,

    v.

GBC INTERNATIONAL BANK,

              Defendant.

CASE NO. 2:21-cv-01486-BAT

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

      Defendant GBC International Bank ("GBC") moves for dismissal of Plaintiff Stanford Tukwila Hotel Corp.'s Amended Complaint (Dkt. 3) on the grounds that it fails to state a claim upon which relief can be granted. Dkt. 11. Plaintiff brings this action against GBC for its alleged failure to submit Plaintiff's second draw loan application with the Paycheck Protection Program ("PPP") before the PPP ended. Plaintiff brings claims of negligence, breach of fiduciary duty, negligent or intentional misrepresentation, breach of contract, and fraud. Plaintiff states that it is entitled to recover $403,735.00, the full amount it "would have received in loan proceeds and which would have been forgiven" had GBC properly handled its loan application. Dkt. 3. Plaintiff opposes the motion to dismiss. Dkt. 13.

      After careful consideration of the Amended Complaint, the parties' briefing, and balance of the record, the Court grants the motion to dismiss.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 1

1

BACKGROUND

2  A.      The CARES Act - Paycheck Protection Program ("PPP")

3          On March 27, 2020, in response to the rapidly worsening coronavirus pandemic,

4  Congress enacted the Coronavirus Aid, Relief, and Economic Stimulus Act ("CARES Act"),

5  which created the Paycheck Protection Program ("PPP") to be administered by the Small

6  Business Administration ("SBA"). Pub. L. 116-136, 134 Stat. 281 (2020). Congress placed the

7  PPP within 15 U.S.C. § 636(a), the codification of Section 7(a) of the SBA, which provides the

8  SBA's existing authority to issue loans to small businesses. However, the CARES Act modified

9  certain requirements of Section 636(a) and greatly expanded eligibility beyond the types of

10  entities that would ordinarily be able to receive a small business loan. *See* CARES Act § 1102,

11  codified at 15 U.S.C. § 636(a)(36). The PPP enables the SBA to guarantee loans to small

12  businesses, non-profits, and other entities to allow them to keep employees on their payroll and

13  continue operations during the pandemic. The CARES Act provides that a borrower can receive

14  a covered loan in an amount not exceeding two and a half times its average monthly payroll costs

15  up to ten million dollars. 15 U.S.C. § 636(a)(36)(E). Subject to certain limitations, borrowers are

16  eligible to have their PPP loans forgiven to the extent they are used loans for payroll costs or

17  covered mortgage interest payments, rent, and utilities. 15 U.S.C. § 9005(b).

18          Plaintiff received $288,300 from the first found of PPP funding.[1] GBC processed and

19  funded Plaintiff's first round PPP loan in April 2020. That loan has since been fully forgiven

20  pursuant to the PPP. The PPP ended on May 31, 2021.[2]

21

22  [1] *See*, https://projects.propublica.org/coronavirus/bailouts/loans/stanford-tukwila-hotel-corp-7213947305

23  [2] https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 2

1  B.   <u>Plaintiff's Allegations – Amended Complaint (Dkt. 3)</u>

2          In January 2021, Plaintiff applied for a second draw PPP loan in the amount of

3  $403,735.00. Dkt. 3, ¶¶ 3.1, 3.2. Plaintiff submitted signed PPP loan documents to GBC's

4  employees. On February 18, 2021, Plaintiff received an email from GBC stating "Your file is

5  still under review for SBA Processing." *Id.* at ¶ 3.4, Exhibit 1. On February 25, 2021, Plaintiff

6  received another email from GBC, which stated, in relevant part, that Plaintiff's file was "still in

7  process & communication is being made to the SBA to clear some requirements. Currently we

8  are awaiting clarification in processing since the passing of one of the business owners." *Id.*, ¶

9  3.5, Exhibit 2.

10         On February 26, 2021, Plaintiff submitted additional tax documents for its shareholders

11  in an email to Steve J. Kim, GBC's First Vice President. *Id.*, ¶ 3.6, Exhibit 3. In response, Mr.

12  Kim asked a Ms. Lee to give him a call. *Id.* There are no allegations as to whether this telephone

13  call took place or as to the substance of any such call.

14         On June 30, 2021 (after the PPP ended), Plaintiff received an email from GBC with loan

15  documents for PPP Loan No. 1157319108, which Plaintiff executed the next day. *Id.*, ¶ 3.7,

16  Exhibit 4. Plaintiff was then informed by a GBC employee that the loan documents had been

17  sent in error. Plaintiff requested new loan documents but never received any further

18  communication or documents from GBC. *Id.*

19         GBC never notified Plaintiff that its loan application had been rejected or was not

20  processed. *Id.*, ¶ 3.8. GBC did not file an application with the SBA on behalf of Plaintiff for the

21  second round of PPP loan by May 31, 2021 and did not notify Plaintiff that it was unable to file

22  the application by May 31, 2021. ¶¶ 3.8, 3.9, 3.10.

23

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 3

1    On August 26, 2021, Plaintiff's counsel sent a demand letter for compensation for the

2    amount Plaintiff have received or in the alternative for any explanation or documentation that

3    Plaintiff would not have qualified for a second round of PPP loan or any evidence that the loan

4    application was submitted but was rejected. GBC has not formally responded to the demand. *Id.*,

5    ¶ 3.11, Exhibit 5.

6                                    STANDARD OF REVIEW

7    A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter,

8    accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

9    662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When

10   considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact

11   and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213

12   F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual

13   allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me

14   accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a

15   statement of a legal conclusion "are not entitled to the assumption of truth." *Id*. at 679. In other

16   words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the

17   elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be

18   granted. *Id*. at 678 (citations and internal quotation marks omitted).

19   "When there are well-pleaded factual allegations, a court should assume their veracity

20   and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S.

21   at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the

22   speculative level." *Twombly*, 550 U.S. at 555-56. "Determining whether a complaint states a

23   plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 4

1   its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

2          In general, a court may not consider any material outside the pleadings in ruling on a

3   Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint

4   may be considered. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1555 n. 19

5   (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are alleged in a

6   complaint and whose authenticity no party questions, but which are not physically attached to the

7   pleading," may be considered in ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d

8   449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307

9   F.3d 1119 (9th Cir.2002). Also, the court may take judicial notice of matters of public record.

10  *See* Fed.R.Evid. 201; *Mack v. South Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir.1986).[3]

11                                    DISCUSSION

12  A.     Negligence

13         Under Washington law, "[a] cause of action for negligence requires the plaintiff to

14  establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a

15  proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*,

16  124 Wn.2d 121, 127-28, 875 P.2d 621 (1994); *Johnson v. Wash. State Liquor & Cannabis Bd*.,

17  197 Wn.2d 605, 611, 486 P.3d 125, 130 (2021).

18         Plaintiff alleges that when GBC agreed to process Plaintiff's second draw PPP

19  application, it assumed a duty to do so in a timely manner, *i.e.*, before expiration of the SBA

20  deadline. Dkt. 2, ¶¶ 4.1—4.6.

21

22

23

---

[3] In this regard, Plaintiff submitted exhibits in opposition. *See* Dkt. 13-2 and 13-3. As these are the same exhibits attached to the Amended Complaint, they have been considered by the Court.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 5

1    GBC argues that this claim must be dismissed because even if it had a duty to diligently

2    complete Plaintiff's loan application, it did so and had successfully submitted Plaintiff's loan

3    application to the SBA on February 5, 2021. Plaintiff counters with this the "belief" that "GBC

4    failed to act on the application made by the borrower in January 2021 until sometime in June

5    when the program had already ended." Dkt. 13, p. 4. However, Plaintiff alleges no facts to

6    support this "belief." On the other hand, Plaintiff's Exhibits 1, 2, and 3 reflect that Plaintiff's

7    "file is still in process" and that GBC was working with the "SBA to clear some requirements,"

8    (including the death of one of Plaintiff's business owners).

9        In addition, Plaintiff has not plead a causal connection between GBC's conduct and an

10   injury. Plaintiff knew or should have known, that not all PPP loans were automatically approved

11   and even if approved, not all were funded before the PPP ran out of funds. Plaintiff also knew or

12   should have known (particularly as it had previously participated in the process and received a

13   draw) that PPP loan applications were thoroughly reviewed by the SBA and the SBA had

14   ultimate approval authority. Plaintiff cannot plausibly allege that it was *guaranteed* an approved

15   and funded loan. While Plaintiff may have assumed that it was *entitled* to a second round of PPP

16   funding[4] (approximately twice what it received in the first round), there are no facts upon which

17   to base the bare assumption that it was entitled to receive a second unsecured and forgivable

18   loan. Plaintiff also admits that it knew, as early as May 5, 2021, that "the SBA announced that it

19   had run out of money for most borrowers and would not take new applications[.]" Dkt. 13, p. 3.

20       Plaintiff attempts to bolster its claims based on several "beliefs." First, Plaintiff states its

21   belief that "Steve Kim and several of his team members resigned from GBC" and that "after their

22

23   ---

[4] Plaintiff alleges that it was "entitled" to the second round of PPP funding because it met all three of the SBA's requirements. Dkt. 13, p. 2. (citing "SBA website information on Second Draw PPP loan.")

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 6

1    resignation, GBC failed to hire replacements and otherwise failed to follow up on the loan

2    applications that were being worked on by Steve Kim and others." Dkt. 13, p. 3. Plaintiff

3    provides no facts to support this supposition. According to GBC, Mr. Kim's employment with

4    GBC ended on September 9, 2021, well after the PPP ended and long after Mr. Kim had notified

5    Plaintiff that June 2021 generation of loan documents was an SBA system error. Dkt. 14, p. 4.

6          Second, Plaintiff believes that GBC, as a "community financial institution generally

7    serving Asian American community, could have made new applications even after May 5" based

8    on the SBA's announcement that the PPP would continue to accept new applications from

9    community financial institutions typically serving minority borrowers. Dkt. 13, p. 3. Again,

10   Plaintiff alleges no facts to support this belief and according to GBC, it does not fall within the

11   types of lenders for whom the SBA had extended the application deadlines.[5]

12         Third, Plaintiff believes "that GBC failed to act on the application made by the borrower

13   in January 2021 until sometime in June when the program had already ended." Dkt. 13, p. 4.

14   Again, Plaintiff alleges no facts to support this belief and in fact, Plaintiff's Exhibits 1, 2, and 3

15   reflect that GBC personnel were working with Plaintiff's representatives to address SBA

16   processing issues. Dkt. 3-1, pp. 1-6.

17         Fourth, Plaintiff contends that, even if the GBC did successfully submit its application,

18   "GBC failed to provide any type of explanation or a copy of the denial by the SBA to

19   [Plaintiff]." Dkt. 13, p. 4. However, Plaintiff alleges no facts underlying its belief that its loan

20   application was denied when the record reflects that its loan application was still pending review

21   when the PPP program ended.

22

23   [5] Lists of these institutions are publicly available at the following links:
     https://www.cdfi.org/wp-content/uploads/2013/02/Washington-.pdf
     https://www.fdic.gov/regulations/resources/minority/mdi.html

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 7

1    Plaintiff also claims that it signed the second mistakenly issued loan documents on July 1

2    "believing that the loan had been approved." However, Plaintiff also alleges that after it signed

3    the documents on July 1, a GBC representative telephoned to advise that the documents had been

4    sent in error. And, by July 1, Plaintiff already knew that the SBA had run out of funding. Thus,

5    there are insufficient factual allegations from which it can be reasonably inferred that it was

6    either reasonable or justifiable for Plaintiff to rely on the second set of loan documents, which it

7    had been told were not effective or valid.

8    Because Plaintiff has not alleged that GBC breached a duty and caused it injury, the

9    negligence claim will be dismissed.

10   B.    Breach of Fiduciary Duty

11   Breach of a fiduciary duty imposes liability in tort. *Micro Enhancement Int'l, Inc. v.*

12   *Coopers & Lybrand, LLP*, 110 Wash.App. 412, 433, 40 P.3d 1206 (2002).  The plaintiff must

13   prove (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, (3) resulting

14   injury, and (4) that the breach of duty proximately caused the injury. *Id*. at 433–34, 40 P.3d

15   1206.

16   Plaintiff alleges that GBC assumed a fiduciary duty to Plaintiff when it became Plaintiff's

17   *financial advisor* and through Steve Kim, GBC's loan officer, *gave advice and guided Plaintiff*

18   *in the processing of the loan*. Plaintiff alleges that Defendant breached this duty when it failed to

19   submit the loan application to the SBA in a timely manner and failed to inform Plaintiff to seek a

20   different bank if GBC was incapable of processing its PPP loan application. Dkt. 3, ¶¶ 5.1—5.6.

21   Based on these allegations, Plaintiff has failed to state a viable claim for the breach of fiduciary

22   duty.

23

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 8

1      "The general rule in Washington is that a lender is not a fiduciary of its borrower; a

2   special relationship must develop between a lender and a borrower before a fiduciary duty

3   exists." *Miller v. U.S. Bank of Wash., N.A.*, 72 Wash.App. 416, 426–27, 865 P.2d 536, 543

4   (1994). A fiduciary relationship may develop if one party occupies such a relation to the other

5   party that the other party justifiably expects that his interests will be cared for. *Liebergesell v.*

6   *Evans*, 93 Wash.2d 881, 889–90, 613 P.2d 1170, 1175 (1980).

7          There are few reported cases in Washington where a fiduciary relationship was found to

8   exist between a lender and a borrower. In *Liebergesell*, the lender was an unsophisticated,

9   widowed schoolteacher with no business experience, who regarded the borrower as a financial

10  counselor and guide. The *Liebergesell* court found the facts were sufficient to establish a right to

11  rely and cited to other where the facts were similarly sufficient to establish a right to rely.

12  However, in each of these cases, there was evidence of either a lack of business expertise,

13  friendship between the parties, or the lender had assumed the role of adviser. *See Liebergesell*,

14  93 Wash.2d at 891, 613 P.2d 1170 (internal citations omitted). Here however, the borrower is a

15  sophisticated hotel corporation seeking a second forgivable governmental relief loan to operate

16  its business.

17         Plaintiff relies on *Tokarz* and *Klein* for the proposition that "one who has special

18  knowledge of material facts … may have a duty to disclose those facts to the other party…".

19  Dkt. 13, pp. 5-6. While the proposition itself is sound, Plaintiff has alleged no such "special

20  knowledge of material facts" and more importantly, has alleged no special relationship between

21  it and GBC that imposed such a duty on GBC. In *Tokarz,* the court did not find any special

22  circumstances giving rise to the imposition of a fiduciary duty as there was no allegation or

23  evidence that the lender had taken on any extra services on behalf of the borrower (other than

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 9

furnishing the money) and had received no greater economic benefit from the transaction (other than the normal mortgage) and the parties did not contractually agree to impose on the lender any additional duty to disclose. *Tokarz v. Frontier Fed. Savs. & Loan Ass'n*, 33 Wn. App. 456, 462-463, 656 P.2d 1089 (1983). Here, Plaintiff's allegations are similarly lacking as it does not allege that GBC took on any extra services on its behalf (other than submitting the loan application) or that GBC received any greater economic benefit from the transaction. Plaintiff also fails to allege any contractual agreement between the parties to impose on GBC an additional duty to disclose.

The other case relied on by Plaintiff is from 1972, is not binding on this court, applies Minnesota state law, and does not support Plaintiff's position. In that case, the Minnesota Supreme Case held that "when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction…". *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 422, 196 N.W.2d 619, 623 (1972) (finding no fiduciary relationship where plaintiff had done business with the defendant for nearly 20 years and socialized with defendant's president).

Plaintiff does not allege any facts to indicate that a "special relationship" existed between it and GBC. Plaintiff attempts to create such a special relationship from what it describes as essentially, regular loan processing activities. The only allegation as to the relationship between Plaintiff and GBC is the statement that, "[a]dvice and guidance was given by Steve Kim, GBC loan officer at the time, who guided Plaintiff in the processing of the loan." Dkt. 3, p. 4. Plaintiff pleads no facts to support this conclusory allegation and therefore, it is not entitled to the assumption of truth. Plaintiff's exhibits also provide no reasonable inference of a special fiduciary relationship as there is only one email from Mr. Kim stating only: "Hello Ms. Lee Could you please give me a call." Dkt. 3-1 at 6. This email is not indicative of anything, much

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 10

1   less a special fiduciary relationship. At best, Plaintiff has alleged that basic documentary advice

2   was provided by GBC in the processing of the PPP application and therefore, there existed an

3   ordinary, arm's length relationship between a bank employee and a loan applicant.

4   Plaintiff also fails to allege a "resulting injury" as there was no guarantee that the SBA

5   would approve its second PPP application. Thus, Plaintiff's claim of breach of fiduciary duty

6   shall be dismissed for failure to state a claim.

7   C.   Negligent or Intentional Misrepresentation

8   To prevail on a claim of negligent misrepresentation, a plaintiff must prove by clear,

9   cogent, and convincing evidence that it justifiably relied on information that the defendant

10   negligently supplied. *See ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 826, 959 P.2d

11   651 (1998) (quoting, RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)). The plaintiff

12   must prove the following six elements: (1) defendant supplied information for the guidance of

13   others in their business transactions that was false; and (2) defendant knew or should have

14   known that the information was supplied to guide the plaintiff in business transactions; and (3)

15   defendant was negligent in obtaining or communicating false information; and (4) plaintiff relied

16   on the false information supplied by the defendant; and (5) plaintiff's reliance on the false

17   information supplied by the defendant was justified (that is, that reliance was reasonable under

18   the surrounding circumstances); and (6) the false information was the proximate cause of

19   damages to the plaintiff. *See*, *Lawyers Title Ins. Corp. v. Soon J. Baik*, 147 Wn.2d 536, 545, 55

20   P.3d 619, 623624 (2002).

21   Elements of intentional misrepresentation include: (1) representation of an existing fact,

22   (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that

23   it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 11

1   reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and

2   (9) damages suffered by the plaintiff. *See*, *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194

3   (1996); *W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 206, 48 P.3d 997, 1000 (2002)

4        Plaintiff alleges that since January 2021, GBC informed Plaintiff that its application was

5   under review and that GBC was still processing the application. Although GBC knew that

6   Plaintiff needed the loan proceeds to continue operating, it failed to provide any proper

7   communication on the application process or filing deadline after February 26, 2021, when

8   Plaintiff submitted additional documents. Plaintiff alleges that it relied on GBC's representations

9   that the application was under review "and that Plaintiff would receive a second round PPP loan

10  through execution of loan documents on July 1, 2021." Plaintiff contends that it had the right to

11  rely on the representations of GBC's employees as GBC provides professional banking services.

12  Dkt. 3, ¶¶ 6.0—6.8.

13       Plaintiff's exhibits include emails from GBC employees later in February reflecting that

14  Plaintiff's PPP application was pending but required further review by the SBA to correct

15  "errors" with Plaintiff's submission. Dkt. 3-1, Exhibits 1-2. The error to be corrected and

16  explained was the death of Plaintiff's principal, Inshik Chung. *Id.*, Exhibit 2. Thus, based on

17  Plaintiff's allegations and exhibits, Plaintiff's second PPP loan application had been submitted

18  and was being reviewed by the SBA.

19       Plaintiff alleges no facts to support its contention that GBC either negligently or

20  intentionally misrepresented "that Plaintiff would receive a second round PPP loan through

21  execution of loan documents on July 1, 2021." As discussed above, GBC contacted Plaintiff

22  right away to let it know that the loan documents sent on July 1, 2021 were sent in error and

23  were not valid so even if such a representation had been made, Plaintiff was not entitled to rely

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 12

1    on it. Moreover, the only way that the SBA could have approved Plaintiff's application in late

2    June 2021, is if that application had already been submitted – thus, Plaintiff's "belief" that GBC

3    never submitted its application appears to have no basis in fact.

4            Plaintiff has also failed to provide facts to support its allegation that GBC either

5    negligently or intentionally misrepresented "that Plaintiff would receive a second round PPP."

6    Plaintiff does not allege when or by whom such a representation was made or why Plaintiff could

7    reasonably rely on such a representation. Plaintiff knew or certainly should have known that the

8    ultimate and singular right of approval for PPP loans was in the hands of the SBA so it had no

9    right to rely on any alleged assurances or guarantees that the SBA would approve Plaintiff's

10   application.

11           Plaintiff was certainly entitled to rely on information sent to it by GBC regarding the

12   processing of Plaintiff's second PPP application. However, without a false statement  – made

13   negligently or with the intent that Plaintiff rely on it to its detriment – Plaintiff has failed to state

14   a claim for either negligent or intentional misrepresentation. Accordingly, Plaintiff's third cause

15   of action is dismissed.

16   D.    <u>Breach of Contract</u>

17           Under Washington law, a contract exists if there is "a mutual intention or 'meeting of the

18   minds' on the essential terms of the agreement." *Olson v. The Bon, Inc*., 144 Wash. App. 627,

19   639, 183 P.3d 359 (2008). Mutual assent generally takes the form of an offer and acceptance.

20   *Saluteen-Maschersky v. Countrywide Funding Corp*., 105 Wash. App. 846, 851, 22 P.3d 804

21   (2001). The burden of proving a contract is on the party asserting its existence. *Id*. *Clear*

22   *Channel Outdoor, Inc. v. Port of Seattle*, 482 Fed. Appx. 211, 212-213 (9th Cir. 2012).

23

1    Plaintiff alleges that GBC breached the June 30, 2021 Second Draw Loan Agreement and

2    Promissory Note by failing to submit the application, to provide the loan proceeds to Plaintiff,

3    and/or to communicate for further remedies. Dkt. 3, ¶¶ 7.1—7.5. In its response, Plaintiff states

4    that "Exhibit 4 to the complaint shows a properly executed copy of a valid contract between

5    [Plaintiff] and GBC." Dkt. 13, p. 6. Plaintiff's Exhibit 4 contains a copy of its PPP Application

6    (Dkt. 13-4, pp. 8—16), along with the SBA Promissory Note and Borrower Certifications (*id.*,

7    pp. 17—23; 24—29) which were sent to Plaintiff by the SBA in error and which Plaintiff signed

8    electronically on July 1, 2021.

9    However, none of these documents is signed or countersigned by GBC. Moreover, as

10   previously discussed, Plaintiff knew that these documents were sent in error: "GBC

11   representative [sic.] tersely informed [Plaintiff] that the documents were sent in error[.]" Dkt. 13,

12   p. 6. Thus, Plaintiff's allegation that this exhibit "shows a properly executed copy of a valid

13   contract between [Plaintiff] and GBC" is not supported by its allegations or exhibits. Plaintiff

14   provides no factual or legal basis to enforce the loan documents against GBC when Plaintiff was

15   informed by GBC that the documents are not valid and were sent in error.

16   Based on the foregoing, Plaintiff's breach of contract action fails.

17   E.   Fraud

18   "In alleging fraud or mistake, a party must state with particularity the circumstances

19   constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In order to plead fraud with particularity,

20   the complaint must allege the time, place, and content of the fraudulent representation;

21   conclusory allegations do not suffice." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d

22   1035, 1042 (9th Cir. 2010). "Claims made on information and belief are not usually sufficiently

23   particular, unless they accompany a statement of facts on which the belief is founded." *Id.*; *see*

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 14

*also McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980) ("Even though this standard permits information-and-belief pleading, it requires that a plaintiff allege sufficient detail to demonstrate that his complaint is grounded in some facts."). Although conditions of an individual's mind such as malice, intent or knowledge may be alleged generally, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

Plaintiff alleges that GBC committed fraud when it "continuously informed Plaintiff that [GBC] was processing the application"; GBC had a duty to know the filing deadline as it provides professional banking and loan processing services; and Plaintiff relied on "[GBC's] invitation that Plaintiff was receiving the loan." Dkt. 3, ¶¶ 8.1—8.8. However, Plaintiff does not allege the time, place, and content of any allegedly fraudulent representation by GBC. In its response, Plaintiff argues that "GBC's representation that the application was submitted on February 5, 2021 *may* have been fraudulent" because GBC failed to respond to Plaintiff's inquiries of whether the application had been properly submitted and, "[i]n fact, if GBC processed the application on February 5, 2021, GBC would not have sent the borrower a loan application on June 30, 2021." Dkt. 13, p. 7.

Plaintiff fails to allege any facts to support the supposition that GBC falsely represented that it submitted Plaintiff's PPP application on February 5, 2021. Plaintiff argues that GBC failed to respond to inquiries regarding the status of the February 5, 2021, but there are no facts alleged in the Amended Complaint to this effect. Rather, Plaintiff alleged that "throughout the process, [Plaintiff] through its representatives, contacted FBC's employees through text message, emails, and visited a branch in Washington to check on the status of the loan." Dkt. 3, p. 3. Similarly,

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 15

Plaintiff's contention that it would not have received the June 30, 2021 loan application if GBC had in fact processed its application on February 5, 2021 is undermined by its acknowledgement that the June 30, 2021 documents were sent in error.

Based on the facts alleged, Plaintiff has failed to state a claim of fraud.

<u>CONCLUSION</u>

For the reasons stated above, GBC's Motion to Dismiss (Dkt. 11) is **GRANTED**. All of Plaintiff's claims are **DISMISSED, with leave to amend**. Any amended complaint shall be filed within **fourteen days** of the date of this Order. GBC's request for an award of attorney's fees and costs is **DENIED**.

DATED this 31st day of January, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS WITH LEAVE TO
AMEND - 16