UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANFORD TUKWILA HOTEL CORP, <br><br> Plaintiff, <br><br> v. <br><br> GBC INTERNATIONAL BANK, <br><br> Defendant. | CASE NO. 2:21-cv-01486-BAT <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND** |

    Defendant GBC International Bank ("GBC") moves for summary judgment dismissal of Plaintiff's negligence claim[1] and requests an award of its attorneys' fees and costs. Dkt. 32. Plaintiff Stanford Tukwila Hotel Corp. opposes the motion (Dkt. 38) and GBC has replied (Dkt. 43). Based on the parties' briefs, summary judgment evidence, and balance of the record, the Court concludes there is no genuine dispute as to any material fact regarding Plaintiff's negligence cause of action and GBC is entitled to summary judgment.

    After the motion for summary judgment was filed, Plaintiff filed a third motion to amend its negligence claim and add a claim for "failure to provide ECOA Notice." Dkt. 42. For the reasons set forth herein, that motion is denied.

---

[1] The Court previously dismissed with prejudice Plaintiff's claims of fraud, breach of fiduciary duty, negligent and/or intentional misrepresentation, and breach of contract. *See*, Dkt. Nos. 15 and 24. Plaintiff's last remaining cause of action is negligence.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 1

RELEVANT FACTS

A.     The Coronavirus Pandemic and PPP

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which, among other things, established the Payroll Protection Program ("PPP"), an $800 billion loan program administered by the U.S. Small Business Administration ("SBA"), through which small businesses could obtain forgivable loans backed by the U.S. Government, but administered by private lenders.

GBC is one such lender. GBC is an esteemed west coast bank with a focus on secured international export lending, one of the foremost lenders in this field, and maintains offices primarily in Los Angeles and the Puget Sound region. GBC is quite proud of the work that it does and of the exceptional professionals who are employed by the bank.[2]

B.     Plaintiff's First PPP Loan and Second PPP Application

When the PPP program opened in April 2020, GBC processed Plaintiff's first round PPP loan application and funded the approved loan in May 2020 in the amount of $288,300 under loan number xxxxxx7305. First round PPP loans were processed manually by GBC employees using ETRAN, the SBA's loan application portal. That loan was fully forgiven approximately one year later in accordance with the parameters of the PPP. Dkt. 36, Kim Decl., ¶ 4.

After receiving the first draw PPP loan in the amount of $288,300, in January 2021 Plaintiff commenced its second draw PPP loan application in the additional amount of $403,735. Plaintiff started its second-round PPP loan application on or about January 14, 2021. To intake and process second round PPP loan applications, GBC contracted with a financial technology

---

[2] https://www.gbcib.com/about-us/our-history

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 2

solutions programming platform called Numerated,[3] unlike the first-round window during which GBC used the SBA's ETRAN portal to intake and process loans. After GBC worked with Plaintiff to complete its second-round loan application and uploaded the necessary documents, GBC completed its review of Plaintiff's application and financial documents and submitted same to the SBA on or about February 5, 2021. *Id.*, Kim Decl., ¶ 7; Dkt. 33, Lam Decl., ¶¶ 5-6.

After its submission, the SBA issued a hold code as to Plaintiff's second-round PPP application due to the death of one of Plaintiff's principal owners. Dkt. 36, Kim Decl., ¶ 8; Dkt. 35, Ross Decl., ¶ 4. GBC subsequently located the obituary for Mr. Inshik Chung. Dkt. 35, Ross Decl., Exhibit B. It appears that Mr. Chung died on April 2, 2020, at approximately the same time as Plaintiff submitted its first-round PPP loan application to GBC. According to GBC, Plaintiff failed to inform GBC that one of its principals was deceased. *Id*. According to Eun K. Lee, CFO and corporate officer of Plaintiff, she informed Mr. Kim of the passing of Mr. Chung when Plaintiff applied for its first draw. Dkt. 39, Lee Decl., ¶ 3. However, Plaintiff's first PPP loan application, which required the borrower to list all owners of more than 20% of equity ownership, and which was signed and submitted after Mr. Chung's death, lists Inshik Chung as an owner with a 49% ownership interest. Plaintiff's PPP Second Draw Borrower Application Form omits any reference to the deceased Mr. Chung, listing instead only Mr. Kwon's 51% ownership interest. Dkt. 44, Ross Decl., Ex. A; Ex. B.

The issue regarding Mr. Chung's ownership interest was conveyed to Plaintiff's representative on or about February 18 and February 21, 2021. Dkt. 35, Ross Decl., ¶ 6; Dkt. 36, Kim Decl., ¶ 10. Ms. Lee states that Mr. Kim contacted her on February 25, 2021, regarding the

---

[3] 2 https://www.numerated.com/about (digital loan origination system for business banking).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 3

issue and she promptly sent K-1 forms for Mr. Kwon, the majority owner, and Mr. Chung, showing the respective ownership interest of each party. Dkt. 39, Lee Decl., ¶¶ 8-9. According to Mr. Ross, these K-1 documents do not in any way address the SBA's error code caused by Mr. Chung's death in early 2020 because the K-1 forms are for tax years 2018 and 2019 (when Mr. Chung was living and could have been a 49% owner in the company). Dkt. 44, Ross, Decl., ¶ 5, Ex. C. At no point during the application process, after the death of Mr. Chung was discovered by the SBA, did Plaintiff inform GBC of who the actual owners of the corporation are. Plaintiff informed GBC that Mr. Chung's ownership interest was embroiled in a probate proceeding in New York but has provided no evidence as to who now owns Mr. Chung's 49%. *Id.*, ¶ 6.

In March 2021, the hold status by the SBA was still in effect. In April 2021, the SBA responded to an inquiry by Ms. Kay Park, a GBC employee, stating that, although one of the guarantors had died, "presuming you can validate that the partnership still exists and that you have the needed authorized signers, you may proceed to certify and proceed with the PPP loan." Dkt. 35, Ross Decl., ¶ 7. According to Mr. Ross, GBC concluded it could not make such a representation to the SBA due to Plaintiff's false representations in the application, the potential for disputes during the probate process, and Plaintiff's somewhat erratic behavior. *Id.*

On May 12, 2021, the SBA PPP team distributed a notice stating the SBA would remove all loans in "Further Research Required" status by May 17, 2021. Dkt. 35, Ross Decl., ¶ 5. Plaintiff's application was in "Further Research Required" status at that time. *Id*.

Per the SBA's website[4]: "**Notice: PPP ended May 31, 2021**[.] The PPP ended on May 31, 2021. Existing borrowers may be eligible for PPP loan forgiveness." (Emphasis in original.)

---

[4] https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 4

GBC, like every other lender, ceased all PPP lending at this time. Dkt. 33, Lam Decl., ¶ 10. The SBA's course of action was to allow PPP applicants with unresolved error codes, such as the Plaintiff, to engage an alternative CFI lender before the program expired and provided a lender match referral process to support that effort. The SBA did not provide much time for applicants to make this switch, and it was in the public record at that time that the PPP had run out of funds.

After the PPP ended as of May 31, 2021, on or about June 30, 2021, the Numerated system changed the status of Plaintiff's second-round application from Under Review to approved by the SBA. This was an error, and the SBA informed GBC that this was an error: the SBA had ended the PPP and had not approved the Loan prior to closing the program. Also in error, confirmed by the SBA, the Numerated system sent out draft loan documents to Plaintiff's representative for signature. In early July 2021, GBC notified Plaintiff the draft loan documents were sent in error and, as far as GBC was aware, the Loan had, unfortunately, not been approved by the SBA and would therefore not be funded by GBC. The SBA told GBC not to fund the loan. Dkt. 33, Lam Decl., ¶¶ 10-11; Dkt. 35, Ross Decl. at ¶ 9.

GBC was unwilling to certify that Plaintiff's application was true and correct in all respects, that Plaintiff was qualified for a second round PPP loan, and/or that Plaintiff would be qualified for forgiveness of any second round PPP loan. Dkt. 33, Lam Decl., ¶¶ 8-9. Plaintiff did not provide any evidence to GBC that Mr. Kwon could bind the corporation unilaterally and GBC did not believe Mr. Kwon could control Mr. Chung's shares of the company. If GBC had certified that Plaintiff was qualified and eligible for the second round PPP loan while Mr. Chung's shares were embroiled in a probate proceeding, and it later came to light that Plaintiff was not qualified or its application was questionable, the SBA would not have honored its guaranty and GBC would have lost the $403,735.00 in loan proceeds. Mr. Kim informed

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 5

1  Plaintiff's employees by phone and e-mail that they did not qualify and that the second PPP loan
2  would not go through. Dkt. 36, Kim Decl., ¶ 16. GBC concluded its involvement in this matter
3  and closed its file at that time.

4  C.   Procedural Background

5       Plaintiff's original Complaint, filed on November 3, 2021, and its Amended Complaint,
6  filed later that same day (Dkt. Nos. 1 and 3), raised five (5) causes of action against GBC:
7  negligence, breach of fiduciary duty, negligent or intentional misrepresentation, breach of
8  contract, and fraud. *Id*. On December 20, 2021, GBC moved to dismiss the Amended Complaint
9  and on January 31, 2022, the Court granted GBC's motion with leave to amend. Dkt. 15.
10 Plaintiff filed its Second Amended Complaint on February 8, 2022, raising the same causes of
11 action except the breach of fiduciary duty claim. Dkt. 16. On March 10, 2022, GBC again moved
12 to dismiss. Dkt. 18. The Court granted the motion in part, and dismissed with prejudice,
13 Plaintiff's causes of action of negligent or intentional misrepresentation, breach of contract, and
14 fraud. Dkt. 24. The Court denied the motion as to Plaintiff's negligence cause of action. *Id.*

15      Discovery is now closed and GBC's motion for summary judgment is pending. Plaintiff
16 now seeks to amend its complaint a third time (Dkt. 1, 2, 16, 42-1). Dkt. 42. Plaintiff seeks to
17 amend its negligence claim to add "a statutory claim against" GBC "[b]ased upon the new
18 evidence discovered." Dkt. 42, pp. 1-2.

19                            DISCUSSION

20 A.   Motion to Amend

21      Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to
22 amend] when justice so requires." Nevertheless, "[t]he ability to amend is not without limits."
23 *Sharrott v. Halawa Prison ADA Compliance Team*, 2019 U.S. Dist. LEXIS 108381, 2019 WL

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 6

2717768, at 2 (D. Haw. June 28, 2019). The Court "balance[s] five factors when considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "Futility arises when the amendment is legally insufficient, . . . or where the amended complaint would be subject to dismissal." *Id*. (citations and internal editorial marks omitted).

Plaintiff claims that "[a]fter conducting discovery, it needs to amend its claim for negligence to add a statutory claim against" GBC [Dkt. 42, pg. 1, lns. 22-23/24], and that the proposed amendment is "[b]ased upon the new evidence discovered" [Dkt. 42, pg. 2, ln. 24]. The statutory claim to which Plaintiff refers is the Equal Credit Opportunity Act ("ECOA," Regulation B), 12 CFR Part 1002.1, *et seq*. However, the "new evidence discovered" related to the ECOA notice are already in the Court Record, were filed by GBC, and were in Plaintiff's possession before this case was filed. Dkt. 36, Kim Decl., ¶ 16, and Exhibits K-L. These communications constitute the ECOA notice required by federal statutes and were sent to Plaintiff in June 2021. The ECOA notice requirements for a commercial/business applicant are found at 12 CFR § 1002.9(a)(3):

> ***Notification to business credit applicants***. For business credit, a creditor shall comply with the notification requirements of this section in the following manner:
>
> * * *
>
> (ii) With regard to a business that had gross revenues in excess of $1 million in its preceding fiscal year or an extension of trade credit, credit incident to a factoring agreement, or other similar types of business credit, a creditor shall:

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 7

>   (A) **Notify the applicant, within a reasonable time, orally or in writing, of the action taken**; and
>
>   (B) **Provide a written statement of the reasons for adverse action and the ECOA notice specified in paragraph (b)(1) of this section if the applicant makes a written request for the reasons within 60 days of the creditor's notification.**

See, 12 CFR § 1002.9(a)(3) (West 2022 ed.) (emphasis added). Guidance from the Consumer Financial Protection Bureau, last updated in May 2020, confirms the foregoing. *See* https://files.consumerfinance.gov/f/documents/cfpb_ecoa-regulation-b_faqs-covid-19.pdf

   Plaintiff cannot dispute that it had gross revenues in excess of $1 million in its preceding fiscal year (*see*, Ross Reply Decl., Dkt. 44, ¶ 7), and thus, the above-quoted provision of ECOA applies. GBC fully complied with all known ECOA requirements when its employee, Steve Kim, notified and informed Plaintiff's employees by phone and email that they did not qualify and that the second PPP loan would not go through. Dkt. 36, Kim Decl., ¶ 16, Exhibits K-L. GBC notified Plaintiff that the loan could not be processed due to the error code on multiple occasions before PPP funds had been exhausted. Dkt. 36, Kim Decl., ¶ 16. Under the ECOA, GBC was precluded from providing a more formal decline as a loan number had not been issued by the SBA before the PPP closed entirely.

   Here, Plaintiff offers no new facts but instead, a new and novel theory that GBC failed to notify Plaintiff of its declination to certify the loan due to the death of one of Plaintiff's principals. Plaintiff offers no evidentiary support for this theory. As noted, all documents related to the ECOA documents were in Plaintiff's possession long before this case was filed. Dkt. 36, Kim Decl., ¶ 16, and Exhibits K-L. Additionally, although Plaintiff claims to have discovered the claimed ECOA violation only after discovery, which is now closed, Plaintiff provides no evidence of any claimed ECOA violation.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 8

1    The Court concludes that the motion to amend based on the ECOA notice should be
2 denied. Any allegation of a failure to provide an ECOA notice, if legally supported, should have
3 been plead in Plaintiff's original Complaint because any documents to support same (or the lack
4 thereof) were already in Plaintiff's possession. As to Plaintiff's negligence claim, Plaintiff has
5 already pled this cause of action three times – in its initial Complaint, First Amended Complaint,
6 and Second Amended Complaint. Dkt. Nos. 1, 3, and 16. Additionally, Plaintiff waited until after
7 the filing of a motion for summary judgment to seek an amendment based on purported evidence
8 recently discovered but provides no documents in support (even its prior exhibits which Plaintiff
9 argues are key to establishing its negligence theory of the case are not part of its proposed
10 amendment. *See*, *e.g.*, Dkt. 16-1). Plaintiff argues that the deposition of GBC's former First
11 Vice-President Steve Kim establishes that GBC chose not to certify Plaintiff's loan and took no
12 action to move forward on the loan. Dkt. 42, p. 2 (citing "Kim Dep. 48-49"). Plaintiff did not
13 provide the Court with any excerpts of Mr. Kim's deposition, although Plaintiff provided the
14 excerpts in response to GBC's motion for summary judgment. *See* Dkt. 41-1, pp. 30-37. The
15 deposition of Mr. Kim was taken on September 28, 2022 – however, Plaintiff's motion to amend
16 was not filed until two months later after GBC filed its motion for summary judgment and
17 Plaintiff responded to that motion. Moreover, Mr. Kim's testimony does not establish any ECOA
18 violation or show GBC was negligent in its handling of the loan.
19    Plaintiff argues, "GBC negligently failed to follow the guideline given by the SBA for
20 resolving the Hold code[.]" Dkt. 42-1, pg. 8, lns. 6-7. However, the record reflects – and Plaintiff
21 was aware – that it was GBC's option whether to certify and move forward with the loan
22 application after the hold code was put in place by the SBA. *See*, Dkt. 34, Exhibit B, pg. 1. A
23 review of the timeline shows the futility of Plaintiff's proposed amendment based on an alleged

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 9

failure to follow SBA guidance.

It is undisputed that Plaintiff's second PPP application was submitted on February 5, 2021 (Dkt. 35, Ross Decl., Ex. A) and by February 6, 2021, the SBA had issued a hold code and declined to approve the application due to the death of one of Plaintiff's principal owners, Inshik Chung, who died April 2, 2020. *Id*., Ex. B. Plaintiff maintains that GBC previously knew of Mr. Chung's death and GBC maintains that it did not. *Id*., Ross Decl., ¶ 4. This dispute is immaterial for at least two reasons. First, it is contradicted by Plaintiff's first PPP loan application. In its first PPP loan application, which required Plaintiff to list all owners of more than 20% of equity ownership, Plaintiff listed Inshik Chung as an owner with a 49% ownership interest, even though he was already deceased. Plaintiff signed the first PPP loan application on April 29, 2020, *after* the death of Mr. Chung on April 2, 2020, but there is no indication of Mr. Chung's death in the application. Dkt. 44, Ross Decl., Ex. A; Ex. B. Second, the fact remains that GBC could not validate the entity status of the corporation because Plaintiff never informed GBC as to the ownership of 49% of its corporate shares, the K-1s sent to GBC by Ms. Lee were not relevant because they were from earlier years when Mr. Chung was alive, and Plaintiff acknowledged that Mr. Chung's ownership interest was embroiled in a probate proceeding in New York. Dkt. 44, Ross Decl., ¶ 6.

In April 2021, the SBA responded to an inquiry by GBC stating, although one of the guarantors had died, "presuming you can validate that the partnership still exists and that you have the needed authorized signers, you may proceed to certify and proceed with the PPP loan." However, if GBC had certified at that time (without proof of 49% of Plaintiff's ownership) that Plaintiff was qualified and eligible for the second round PPP loan, and it came to light that the Plaintiff was not qualified or that Plaintiff's application was questionable, the SBA would not

have honored its guaranty and GBC would have lost the $403,735 in loan proceeds.

Therefore, the requested amendment based on Plaintiff's unsupported claim that GBC should have certified Plaintiff's application despite the need for further proof of ownership is futile and Plaintiff's motion to amend (Dkt. 42) is **denied**.

B.  Motion for Summary Judgment – Negligence Claim

1.  Summary Judgment Standard

Either "party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56. Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*.

The moving party bears the initial burden of showing that there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it nevertheless "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

burden of persuasion at trial." *Id*. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

    2.    <u>Analysis - Negligence</u>

In Washington, "[a] cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994); *Johnson v. Wash. State Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125, 130 (2021).

GBC argues that Plaintiff has not plead and/or substantiated any facts to support every required element of negligence. The Court agrees. At the outset, Plaintiff cannot show the existence of a duty, breach of that duty, and resulting damages. First, Plaintiff cannot establish that GBC owed any specific duty to Plaintiff as there is no guarantee that a lender (here, the SBA) will ultimately fund a loan application. Moreover, under Washington law there is no fiduciary duty owed by a lender to its borrower. *See*, *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn.App. 416, 426-27 (1994). GBC successfully processed the submission of Plaintiff's second PPP loan application, through Numerated, to the SBA on February 5, 2021. That is all GBC was obligated to do as the funding decision rested with the SBA. However, GBC also followed up on more than one occasion with the SBA and Plaintiff to address the disqualifying error code. Although Plaintiff attempts to "shift" the blame to GBC, it is clear the error code resulted entirely from Plaintiff's failure to disclose that one of its owners had died the previous year. GBC's ultimate decision not to incur a risk (while 49% of Plaintiff's ownership remained

uncertain) is not negligence. *See*, *Albino Construction Company v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 114781 (June 17, 2021); 2021 WL 2529811 (failure to request and submit additional documents from potential buyer applying for a PPP loan prior to the end of funding was not negligence).

Plaintiff has also failed to show it suffered an injury due to GBC's negligence. Plaintiff knew or should have known that not all PPP loan applications were automatically approved, and, even if approved, not all were funded before the PPP ran out of funds in May 2021. Plaintiff also knew or should have known the SBA thoroughly reviewed all PPP loan applications and that the SBA had ultimate approval authority over every application. Plaintiff cannot plausibly allege that it was guaranteed an approved and funded second round PPP loan. There are no facts upon which the Court may conclude that Plaintiff was entitled to receive a second unsecured and forgivable PPP loan. Not every PPP applicant had its loan approved and funded by the SBA. As with its first round of PPP funding, Plaintiff had no reasonable expectation that its second loan request would be automatically approved until that approval was received, confirmed, and the loan funded by the SBA prior to May 31, 2021 (the date that the second PPP draws ended). Even if the failure to be granted a forgivable PPP loan could be considered "damage," that damage was solely a result of Plaintiff's failure to disclose the death of one of its principals.

In response, Plaintiff claims there are four disputed issues of fact which preclude summary judgment.

First, Plaintiff attempts to raise an issue of fact by claiming that Eun K. Lee had informed Steve Kim of the death of Inshik Chung prior to submitting the first PPP application. [Dkt. 39, page 1]. This is disputed by Mr. Kim, who testified that he learned of Mr. Chung's death a year after Plaintiff submitted its first application. More importantly, Ms. Lee's testimony is

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 13

contradicted by Plaintiff's PPP application. In the first PPP application, Plaintiff listed Mr. Chung as 49% owner even though he had already passed away and in its second PPP application, Plaintiff failed to accurately disclose all owners of more than 20% of the equity. Additionally, there remains the undisputed fact that Plaintiff failed and continues to fail to disclose the names of the current owners of the 49% interest previously owned by Mr. Chung.

Second, Plaintiff alleges there is a question of fact about whether it was eligible to receive the second round of PPP funding. However, any question about Plaintiff's eligibility arose when Plaintiff failed to fully and accurately complete its application by disclosing all owners with more than a 20% interest in the company. Without full disclosure of all persons or entities with more than 20% ownership, the application remains inaccurate and incomplete. Moreover, whether Plaintiff was eligible is ultimately irrelevant as not all eligible borrowers were able to secure loans and no eligible borrowers were guaranteed loans.

Third, Plaintiff continues to assert GBC is negligent because it took no steps to validate the existence of Plaintiff's ownership interests and the continuing operation of the business. However, in response to GBC's query, Plaintiff provided only copies of Form K-1s for tax years 2018 and 2019 for Mr. Kwon and Mr. Chung, which list Mr. Chung as 49% owner for both years. This is not the persuasive evidence that Plaintiff claims because presumably Mr. Chung was living in 2018 and 2019, and therefore he should have been listed as the minority owner at that time. These forms do not in any way address his death in April 2020 or resolve the resulting hold code issued by the SBA.

Nor is it persuasive evidence to argue that GBC *should have* certified around the hold code. Plaintiff offers no testimony or other evidence that it ever provided GBC with the names of the current owners of the 49% interest previously owned by Mr. Chung. This is a problem of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 14

Plaintiff's own making. It is undisputed the PPP loan applications require disclosure of any owner holding more than a 20% interest. Thus, Plaintiff made essentially false statements on its PPP application(s) by failing to accurately disclose all persons/entities with more than 20% ownership interest when one owner had died.

Plaintiff argues that GBC could easily have resolved the "error" code with additional research. However, additional certification by GBC, once it was made aware of the inaccuracy of the original application, would have opened GBC up to a loss of the guaranty, and thus a loss of the loan in excess of $400,000.00. GBC's decision not to take on this risk is not proof of negligence.

Fourth, Plaintiff claims GBC failed to inform it "explicitly" why it chose not to certify the loan application. GBC informed Plaintiff's employees by phone and email that the second PPP loan would not go through and emailed Plaintiff that "Regarding the part of the SBA for the deceased guarantor, the second PPP is not eligible." Dkt. 36, Kim Decl., ¶ 16. Plaintiff makes much of the allegation that GBC did not inform the Plaintiff explicitly why it chose not to "certify" the loan application was accurate and signed by the correct parties. Ultimately, however, the language used by GBC is not relevant nor is it evidence of negligence. The reason the loan application failed is that a 49% interest of the corporation was embroiled in a probate, the existence of which the Plaintiff did not disclose to the SBA.[5]

## CONCLUSION

Plaintiff has failed to establish that a genuine issue of material fact exists as to its claim of negligence. Accordingly, the Court **grants** GBC's motion for summary judgment. The Court

---

[5] Plaintiff also argues that GBC violated the ECOA. As previously discussed, Plaintiff's motion to amend its complaint to include this claim is denied as futile.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO
AMEND - 15

directs GBC to file a separate motion for fees and costs as directed below.

Accordingly, it is **ORDERED**:

1. Plaintiff's motion to amend (Dkt. 42) is **DENIED**.

2. GBC's motion for summary judgment (Dkt. 32) is **GRANTED**; Plaintiff's remaining claim of negligence against GBC is **dismissed with prejudice**.

3. GBC's motion for fees and costs shall be filed by **January 2, 2023**. Plaintiff may file a response by **January 9, 2023**, and GBC may file a reply by **January 13, 2023**. The Clerk is directed to note the motion for the Court's consideration on **January 13, 2023**.

DATED this 15th day of December, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge